**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DEMETRIOUS WHITE** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| **v.** | : | **NO. 23-CV-3113** |
| | : | |
| **SEARGENT GREENE, *et al.*** | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA QUIÑONES ALEJANDRO, J. SEPTEMBER 12, 2023

Plaintiff Demetrious White, who is currently incarcerated at SCI Albion, filed this civil rights action based on allegations that prison officials failed to protect him and subjected him to excessive force and retaliation while he was incarcerated at SCI Phoenix.[1] White also brings claims under state tort law and seeks to proceed *in forma pauperis*. For the reasons set forth, the Court will (a) grant White leave to proceed *in forma pauperis* and (b) dismiss his Complaint, *in part*, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because some of White's claims are dismissed, without prejudice, White is granted the option of proceeding *only* on the claims that passed statutory screening or filing an amended complaint to attempt to cure the defects in the dismissed claims discussed below.

## I. FACTUAL ALLEGATIONS

White named the following individuals as Defendants in this case: (1) Sgt. Greene; (2) Superintendent Tera; (3) Doctor Mateo; (4) Doctor Glushakaw; (5) Correctional Officer Grenon; (6) Correctional Officer Kirby; (7) Hearing Examiner J. Yodis; and (8) Deputy Mandy Sipple.

---

1 Although the Complaint does not indicate that White was incarcerated at SCI Phoenix during the relevant events, he has only sued employees at SCI Phoenix. (*See* ECF No. 4 (providing addresses for service at SCI Phoenix)).

(Compl. at 1.)[2] He brings claims against these Defendants in their individual and official capacities. (*Id.*)

In the complaint, White alleges that on August 13, 2022, he "continued to inform C.O. Grenon that he needed to see a CPS, or psych due to the fact that [he] felt suicidal." (*Id.* at 2-3.) At the time, White was housed on the "RTU unit" with other inmates "for having extensive mental health history." (*Id.* at 3.) Grenon responded to White by covering his cell window with paper and stating, "I don't feel like dealing with this shit today." (*Id.*) Grenon also told other inmates who were attempting to talk to White to stay away from his cell. (*Id.*) C.O. Kirby told Grenon to remove the paper from White's cell window but made no attempt to remove the paper on her own. (*Id.*) White "started cutting [his] wrist" and received stitches for his injuries. (*Id.*) Sgt. Green was responsible for supervising C.O.s Grenon and/or Kirby that day. (*Id.*)

Grenon allegedly falsified a report to "defame" White and "conceal her actions." (*Id.*) The Complaint does not describe the substance of this report. However, it appears that a hearing was held related to the report and the "hearing examiner stated that he got the call from Supt. Tera to find [White] guilty to protect C.O. Grenon egregious conduct." (*Id.*) White characterizes this as retaliation because he had reported Grenon to Tera. (*Id.*) White further alleges that he informed Dr. Mateo, Dr. Glushakaw, Superintendent Tera and Hearing Examiner Yodis of Grenon's conduct and "asked that she has no contact with [him] as she threatened that if [White] report[ed] her that she would get [him]." (*Id.*)

On August 18, 2022, White encountered Grenon while he was on his way to a visit with the Prison Society. (*Id.* at 4.) Grenon told White to tuck in his shirt, which he did. (*Id.*) Grenon

---

2 The Court adopts the pagination supplied by the CM/ECF docketing system.

then asked White where he was going, and he responded that he was going to "report her to Prison Society." (*Id.*) Grenon responded, "didn't I tell you what would happen if you reported me, you thought I didn't know you reported me to Supt. Tera, Dr. Mateo, and Dr. Glushakaw," and then sprayed White with a whole can of O.C. spray.[3] (*Id.*) Grenon then allegedly "falsified another report to cover up her actions, again defaming [White's] character." (*Id.*) It appears a hearing was held on this second report. "Once again [Hearing Examiner Yodis] informed [White] that he got the call from Supt. Tera." (*Id.*)

On October 23, 2022, Grenon attempted to spray While again while he was handcuffed and shackled and on his way to take a picture, but a Lieutenant intervened. (*Id.* at 5.) Grenon allegedly convinced other correctional officers to "force [White] to take a photo with a spit mask on for the world to see this picture in contrivance of what the 2-year photo is designed for, that is to update a photo of [the inmate] for identification purposes." (*Id.*) White alleges that Grenon did this to retaliate against White for reporting her and notes that the photograph of him was posted on the D.O.C. website. (*Id.*)

Based on the above allegations, White brings claims pursuant to 42 U.S.C. § 1983 for excessive force, failure to protect, conspiracy, and retaliation, as well as state law claims for defamation, and assault.[4] (*Id.* at 1-2.) White seeks damages and injunctive relief in the form of

---

3 "O.C." is an apparent reference to oleoresin capsicum, a type of pepper spray.

4 Although the Complaint also cites 42 U.S.C. §§ 1981, 1985 and 1986, White appears to have cited those statutes in error because he makes no effort to state a claim under them. Indeed, to state a plausible claim under § 1985(3) a plaintiff must allege, among other things, a conspiracy motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws. *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997). However, nothing in the Complaint suggests that any actions taken against White were based on his race or class, which is fatal to any claim under § 1985(3) and/or § 1986. *See Rose v. Guanowsky*, No. 21-3280, 2022 WL 910341, at *1 (3d Cir. Mar. 29, 2022) (affirming dismissal of § 1985(3) and § 1986 claims where plaintiff pled only conclusory allegations that were unsupported by any details within the complaint); *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) ("[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting

an order reprimanding the Defendants, suspending them without pay, and terminating Grenon.[5] (*Id.*)

## II. STANDARD OF REVIEW

The Court will grant White leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[6] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires a court to dismiss a complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). Rule 12(b)(6) requires the court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021). "At this early stage of the

---

violation of § 1985.'" (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)). Further, since White has sued state actors, § 1983 rather than § 1981 governs his claims. *See McGovern v. City of Philadelphia*, 554 F.3d 114, 121 (3d Cir. 2009) (explaining that § 1983 provides "the exclusive remedy for violations of § 1981 by state actors"); *see also Goodall-Gaillard v. N.J. Dep't of Corr.*, 625 F. App'x 123, 128 (3d Cir. 2015) ("[A]s the District Court properly noted, § 1981 does not provide a private right of action against state actors."). Accordingly, the Court will focus on White's § 1983 claims and state law claims. *See Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 248 (3d Cir. 1999) (explaining that, when assessing a *pro se* complaint, court should "apply the applicable law").

[5] White's claims for injunctive relief are moot as White is no longer incarcerated at SCI Phoenix. *See Robinson v. Cameron*, 814 F. App'x 724, 725 (3d Cir. 2020) (dismissing appeal as moot where suit sought only injunctive relief and inmate was no longer in custody); *Griffin v. Beard*, 401 F. App'x 715, 716 (3d Cir. 2010) (*per curiam*) ("An inmate's transfer from the facility complained of generally moots the equitable and declaratory claims."). In any event, the Court has no authority to impose the type of injunctive relief that White requests. *See Hall v. Carny*, No. 22-4094, 2023 WL 187569, at *1 (E.D. Pa. Jan. 13, 2023) (dismissing with prejudice the request that defendant prison official be terminated from his employment); *Buskirk v. Pennsylvania Bd. of Prob. & Parole*, No. 22-1826, 2022 WL 4542094, at *1-2 n.4 (E.D. Pa. Sept. 28, 2022) (construing plaintiff's request for the court to terminate the defendants' employment as seeking injunctive relief and holding that the court has no authority to terminate the employment of a state employee).

[6] Because White is a prisoner, he must still pay the $350 filing fee in installments as mandated by the Prison Litigation Reform Act.

litigation,' '[the court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. As White is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc*., 704 F.3d 239, 244-45 (3d Cir. 2013)).

## III. DISCUSSION

White asserts his constitutional claims pursuant to § 1983, the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and [or] laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). White also brings state tort claims, which are governed by Pennsylvania law.

### A. Official Capacity Claims Against All Defendants

Official capacity claims are indistinguishable from claims against the governmental entity that employs the Defendants, here the DOC. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. N.Y.C. Dept. of Soc. Servs*., 436 U.S. 658, 690, n. 55 (1978)). Thus, § 1983 claims against the individual defendants here — all of whom appear to be employed by the DOC — are really claims against the DOC, which is shielded from § 1983 suits by Eleventh Amendment immunity and is not considered a "person" subject to liability under § 1983. *See also Downey v. Pennsylvania Dep't of Corr*., 968 F.3d 299,

309-10 (3d Cir. 2020) ("Eleventh Amendment immunity bars actions for retroactive relief against state officers acting in their official capacity."); *Lavia v. Pennsylvania, Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (explaining that, "[b]ecause the Commonwealth of Pennsylvania's Department of Corrections is a part of the executive department of the Commonwealth, it shares in the Commonwealth's Eleventh Amendment immunity" and is also not considered a person for purposes of § 1983). Accordingly, all claims asserted against the Defendants in their official capacity are dismissed with prejudice.

**B. Individual Capacity Claims Against Sipple and Green**

White has failed to state a claim against Defendants Sipple and Green. In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). "Suits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Here, White does not allege any facts indicating that Deputy Superintendent Sipple was in any way involved in the events giving rise to his claims. To the extent Sipple was sued because of her high-level position at SCI Phoenix, her position, without more, is an insufficient basis to support liability absent allegations of personal involvement. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation).

White also fails to allege that Defendant Green was personally involved in the events giving rise to his claims. The only allegation against Green is that she was Grenon and/or Kirby's supervisor on the day that White harmed himself, (Compl. at 3), which is an insufficient basis for holding her liable under § 1983. *See Noble v. Wetzel*, No. 22-1328, 2022 WL 16707071, at *2 (3d Cir. Nov. 4, 2022) ("[T]o the extent that Noble sought to bring claims against these defendants solely in a supervisory capacity, such claims are not cognizable under § 1983."); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 290 (3d Cir. 2018) ("Each Government official, his or her title notwithstanding, is only liable for his or her *own* misconduct.") (quoting *Iqbal*, 556 U.S. at 677) (emphasis in original). Nor is there a clear basis for any state law claims against these Defendants.

**C. Individual Capacity Claims Against Grenon, Kirby, Yodis, and Tera**

**1. Failure to Protect from Self-Harm**

White asserts an Eighth Amendment failure to protect claim against White and Kirby based on their alleged failure to protect him from self-harm on August 13, 2022. (Compl. at 3 ("C.O. Kirby and Grenon are guilty of failing to protect me.").) To state an Eighth Amendment claim based on deliberate indifference to the risk of suicide or self-harm, the plaintiff must allege facts supporting plausible inferences "(1) that the individual had a particular vulnerability to suicide,

meaning that there was a strong likelihood, rather than a mere possibility, that a suicide would be attempted; (2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223-24 (3d Cir. 2017) (internal quotations omitted). A "strong likelihood of suicide must be so obvious that a lay person would easily recognize the necessity for preventative action." *Id.* at 222.

White alleges that, while he was incarcerated on a unit for inmates with "extensive" mental health histories, he "continued to inform C.O. Grenon" that he required treatment because he "felt suicidal," but that Grenon responded by covering his cell window with paper and stating that she didn't feel like "dealing with this shit today." (Compl. at 3.) Kirby, who was also present on the block, informed Grenon that she had to remove the paper, but took no further action, and White ultimately cut his wrist and required stitches. These allegations support an inference that Grenon and Kirby were aware of a strong likelihood White would harm himself but covered his window so he was out of sight and opted not to do anything to address the situation. Accordingly, White may proceed past screening on his claim that Grenon and Kirby were deliberately indifferent to his risk of suicide and/or self-harm by failing to protect him from self-harm. *See Talley v. Griesmer*, No. 19-3796, 2023 WL 3002742, at *1 (3d Cir. Apr. 19, 2023) (*per curiam*) (inmate stated vulnerability to suicide or self-harm claim where he was left in a cell with a razor, "asserted that he was suicidal and used the razor to cut himself," and "claimed that the defendants, who were aware of his threats and wounds, left him in his cell unsupervised for over an hour"); *Hinton v. Mark*, 544 F. App'x 75, 77 (3d Cir. 2013) (*per curiam*) ("Hinton's allegations state a claim . . . .

Hinton announced that he intended to kill himself, which indicates a strong likelihood, rather than a mere possibility, that self-inflicted harm will occur." (internal quotations omitted)).

**2. Excessive Force and Assault**

The Eighth Amendment prohibits prison officials from unnecessarily and wantonly inflicting pain in a manner that offends contemporary standards of decency. *See Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "Force that is used 'maliciously and sadistically for the very purpose of causing harm' violates the Eighth Amendment." *Young v. Martin*, 801 F.3d 172, 180 (3d Cir. 2015) (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). The factors used to determine whether the force applied was excessive include: "(1) 'the need for the application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) ''the extent of injury inflicted'; (4) 'the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them'; and (5) 'any efforts made to temper the severity of a forceful response.'" *Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The inquiry is driven "by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 648 (3d Cir. 2002). "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 F. App'x 860, 862 (3d Cir. 2020) (quoting *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)); *see also Passmore v. Ianello*, 528 F. App'x 144, 147 (3d Cir. 2013) (*per curiam*) (explaining that the use of chemical agents is not a *per se* constitutional violation).

The Court understands White to be bringing an excessive force claim against C.O. Grenon based on the events of August 18, 2022, when Grenon allegedly sprayed White with an entire can of pepper spray while he was on his way to report her to the Prison Society. (Compl. at 4.) Prior

to spraying White, Grenon allegedly stated, "Didn't I tell you what would happen if you reported me, you thought I didn't know you reported me to Supt.-Tera, Dr. Mateo, and Dr. Glushakaw," which supports an inference that Grenon sprayed White to punish and harm him for having reported her. (*Id.*) These facts support a plausible excessive force claim and are sufficient to proceed past screening.

The Court construes the Complaint as invoking this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367, and raising state law tort claims for assault (and presumably battery) related to the pepper spraying incident. (Compl. at 2.) "Assault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994) (quoting *Cohen v. Lit Bros.*, 70 A.2d 419, 421 (Pa. 1950)); *see also C.C.H. v. Phila. Phillies, Inc.*, 940 A.2d 336, 340 n.4 (Pa. 2008) (a battery is harmful or offensive contact with another person). Because the allegations supporting these state law claims are the same as those supporting White's excessive force claim, the Court declines to dismiss these claims at this stage of the litigation. *See Short v. Webb*, Civ. A. No. 18-4130, 2019 WL 4573254, at *5 (E.D. Pa. Sept. 20, 2019) (declining to dismiss state law claims of assault and battery where the claims were based on the same allegations that supported the excessive force claim which was permitted to proceed). Accordingly, the Court will also allow White's state law claims of assault and battery based on the pepper spray incident to proceed against Grenon.

**3. Defamation**

The Court understands White to be bringing "defamation" claims against Grenon based on her alleged falsification of two "reports" that "defamed" him. (Compl. at 3, 4.) He also appears to be alleging that Yodis and Tera defamed him. (*Id.* at 5.) To state a claim for defamation under

Pennsylvania law, a plaintiff must allege the following elements: (1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; and (5) the understanding by the recipient of it as intended to be applied to the plaintiff. *Graboff v. Colleran Firm*, 744 F.3d 128, 135 (3d Cir. 2014); *see also* 42 Pa. Cons. Stat. § 8343(a)). "Under Pennsylvania law, the court must decide at the outset whether a statement is capable of defamatory meaning." *Tucker v. Fischbein*, 237 F.3d 275, 281 (3d Cir. 2001). "A statement is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Id.* at 282 (internal quotations omitted).

In the event White intended to bring this claim under § 1983, under the Constitution, an individual does not have a protected interest in reputation alone. *See Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d Cir. 2006) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). Rather, "defamation is actionable under 42 U.S.C. § 1983 only if it occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul*, 424 U.S. at 701-12). Therefore, a plaintiff must plead a "stigma-plus" claim in his complaint. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006) (noting that "to make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest").

White's unsupported allegations of "defamation" fail under either standard. Although White alleges that Grenon defamed him by filing false reports, he does not identify the statements at issue in the reports nor does he explain how those statements adversely affected his reputation. He has also failed to adequately allege the deprivation of an additional right or interest for the

purpose of any constitutional claim. White's claims against Yodis and Tera are even less clear, as White does not allege facts explaining how those Defendants "defamed" him. For these reasons, White's defamation claims fail because they are vague and conclusory.

**4. Retaliation**

White alleges that Grenon retaliated against him in several respects after he reported her for how she handled the events of August 13, 2022. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). A prisoner's filing of a grievance or expressing an intent to file a grievance constitutes constitutionally protected conduct. *See Watson v. Rozum*, 834 F.3d 417, 422-23 (3d Cir. 2016); *Allah v. Seiverling*, 229 F.3d 220, 224-25 (3d Cir. 2000). "An adverse consequence 'need not be great in order to be actionable[;]' rather, it need only be 'more than *de minimis*.'" *Watson*, 834 F.3d at 423 (quoting *McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006)) (alterations in original). "[B]eing placed in lockdown, being moved to restricted housing, and being issued misconduct charges are more than '*de minimis*' adverse actions." *See Palmore v. Hornberger*, 813 F. App'x 68, 70 (3d Cir. 2020) (*per curiam*) (quoting *McKee*, 436 F.3d at 170); *see also Mitchell*, 318 F.3d at 530-31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson*, 834 F.3d at 422.

White alleges that Grenon retaliated against him by pepper-spraying him on August 18, 2022 while he was on his way to report her to the Prison Society. (Compl. at 4.) White alleges that Grenon sprayed him with the entire bottle after stating "Didn't I tell you what would happen if you reported me, you thought I didn't know you reported me to Supt.-Tera, Dr. Mateo, and Dr. Glushakaw." (*Id.*) These allegations are sufficient to proceed past screening. *See Ross v. Fiss*, No. 21-02080, 2021 WL 6072706, at *5 (M.D. Pa. Dec. 23, 2021) (permitting claim to proceed past screening where plaintiff alleged that defendant "retaliated against him for writing grievances by demanding that Plaintiff cuff up and using OC spray against him for no reason"); *see also Whitney v. Posika*, No. 19-1237, 2022 WL 4104274, at *8 (W.D. Pa. Sept. 8, 2022) (agreeing that "use of force incidents" satisfied "adverse action" prong of retaliation claim).

White also brings retaliation claims against Grenon based on her alleged falsification of two reports defaming him — one following the incident on August 13, 2022, and the second following the incident on August 18, 2022. Although charging White with a false misconduct could be sufficient adverse action for purposes of establishing a retaliation claim, White does not actually allege that he was charged with a misconduct, provide any details about the nature of the "reports" filed by Grenon, or identify any consequences he allegedly suffered as a result of the false reports.[7] Accordingly, he has failed to state a plausible retaliation claim based on the reports that were filed against him. *See Walker v. Mathis*, 665 F. App'x 140, 143 (3d Cir. 2016) (*per curiam*) ("The only adverse action allegedly taken against Walker as a result of the misconduct charge was his temporary removal from his work assignment and two days of lost prison wages. This single, temporary inconvenience does not meet the standard.")

[7] White's vague suggestion that the report "will be viewed by an outside source (Parole Board) to deny me parole" is entirely speculative. (Compl. at 3.)

White brings a third retaliation claim against Grenon based on allegation that on October 23, 2022, she convinced other correctional officers to take his "2-year photo," which is to be used for identification purposes, while he was wearing a spit mask. (Compl. at 5.) Even assuming that the taking of this photograph, which White alleges humiliated him, could constitute an adverse action, White has not alleged sufficient factual information to support retaliation. This incident occurred more than two months after White's prior issues with Grenon, which is not unusually suggestive, and nothing else in the Complaint suggests a factual basis from which an inference of retaliation could be drawn. *See, e.g., LeBoon v. Lancaster Jewish Cmty. Cent. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) ("Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation . . . ."); *Williams v. Phila. Housing Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding that time frame of approximately two months between protected conduct and adverse action was not unusually suggestive of retaliation), *superseded by statute in nonrelevant part, as recognized in Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 188 n.30 (3d Cir. 2019). Accordingly, this retaliation claim also fails. *See Oliver v. Roquet*, 858 F.3d 180, 195 (3d Cir. 2017) ("Absent supporting facts that make it reasonable to draw an inference of retaliation, these conclusory assertions of a cause-and-effect relationship between specific protected activities and a later adverse action are insufficient to plead causation.").

**5. Conspiracy**

White alleges that Yodis and Tera conspired to retaliate against him based on their handling of Grenon's allegedly false reports, allegedly to cover up Grenon's wrongdoing. (Compl. at 3, 5.) "To prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under

color of state law reached an understanding to deprive him of his constitutional rights." *Jutrowski*, 904 F.3d at 293-94. "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). For the reasons discussed above, White's allegations of retaliation based on the reports are too vague to state a claim as pled. Accordingly, any related conspiracy claims fail as well as inadequately pled. *See Adderly v. Stofko*, 646 F. App'x 138, 143 (3d Cir. 2016) (*per curiam*) ("With no facts to plausibly allege any individual acts of retaliation, Adderly also cannot sustain a claim that the defendants collectively conspired against him.").

**D. Individual Capacity Claims Against Dr. Mateo and Dr. Glushakaw**

White's only allegation against Dr. Mateo and Dr. Glushakaw is that sometime after the events of August 13, 2022, White informed the two doctors of "the conduct of C.O. Grenon, and asked that she has no contact with me as she [threatened] that if I report her that she would get me." (Compl. at 4.) Construing the Complaint liberally, it appears that White may be attempting to raise a failure to protect claim against Drs. Mateo and Glushakaw.

To state a plausible failure to protect claim, White must allege that: (1) the conditions in which he was incarcerated posed a substantial risk of serious harm; (2) prison officials acted with deliberate indifference to that substantial risk of serious harm; and (3) the officials' deliberate indifference caused harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference is a subjective standard. *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001). White must allege that the prison officials "knew or were aware of and disregarded an excessive risk to [his]

health or safety." *Id*. at 135. "[I]t is not sufficient that the official should have been aware" of the excessive risk. *Id*. at 125.

Here, White has not alleged a plausible basis for a claim that Drs. Mateo and Glushakaw failed to protect him from Grenon. His allegation is sparse and undeveloped. It is not clear when White reported Grenon to the doctors, what the doctors did, if anything, in response, and whether the doctors had the ability, authority, or opportunity to direct that Grenon have "no contact" with White. Accordingly, the Complaint does not state a failure to protect claim against Drs. Mateo and Glushakaw.[8] *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotations omitted)); *Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

## IV.      CONCLUSION

For the foregoing reasons, the Court will grant White leave to proceed *in forma pauperis* and dismiss his Complaint, *in part*. The following claims pass statutory screening and are ready to proceed to service under Federal Rule of Civil Procedure 4 and 28 U.S.C. § 1915(d): (1) White's Eighth Amendment claims against C.O. Grenon and C.O. Kirby for failure to protect him from self-harm on August 13, 2022; and (2) White's Eighth Amendment excessive force claim, assault and battery claims, and retaliation claim against Grenon based on her use of pepper spray against him on August 18, 2022.

---

[8]     Nor is any other basis for a claim apparent against these doctors. To the extent White raises similar failure to protect claims against Yodis and Tera, his allegations lack context and are likewise too vague to state a claim. (*See* Compl. at 4.)

The remainder of White's claims are dismissed, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim, with the exception of White's official capacity claims, which are dismissed, with prejudice. Considering White's *pro se* status, prior to directing service, the Court will give White the option of either filing an amended complaint in the event he can address the defects the Court has noted, or, in the alternative, White may advise the Court that he seeks to proceed *only* on the claims that pass statutory screening.

An appropriate Order follows, which provides White further guidance on his options for proceeding.

White's Motion for Appointment of Counsel (ECF No. 3) will be held in abeyance at this time, and will not be addressed before this case proceeds to service.

*NITZA QUIÑONES ALEJANDRO, J.*